UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMILIO TORRES, an individual,

    Plaintiff,

v.

VITALE'S ITALIAN RESTAURANT, INC.,
a Michigan Corporation, d/b/a VITALE'S GRAND
RAPIDS and SALVATORE VITALE,
an individual,

    Defendants.

Case No. 1:18-cv-01088
Hon. Paul L. Maloney

| | |
|---|---|
| Robert Anthony Alvarez (P66954) <br> Agustin Henriquez (P79589) <br> **AVANTI LAW GROUP, PLLC** <br> Attorneys for Plaintiff <br> 600 28th St. SW <br> Wyoming, MI 49509 <br> (616) 257-6807 <br> Email: ralvarez@avantilaw.com | Ian A. Northon  (P65082) <br> Patrick E. Sweeney  (P79822) <br> **RHOADES MCKEE PC** <br> Attorneys for Defendants <br> 55 Campau Avenue, N.W., Suite 300 <br> Grand Rapids, MI  49503 <br> (616) 235-3500 <br> Email: ian@rhoadesmckee.com |

## DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT

Defendant Vitale's Italian Restaurant, Inc., a Michigan corporation, d/b/a Vitale's Grand Rapids, and Salvatore Vitale, its owner, by and through their undersigned counsel, state as follows for their Answer to the Plaintiff's Complaint:

1. This is a civil action brought by Plaintiff, Emilio Torres, to recover for Defendants' willful and knowing violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, et seq. for Defendants' retaliation in response to Plaintiff complaining of Defendants' pay practices regarding the overtime premium for all hours he worked in excess of forty hours per workweek to which he was entitled to under the FLSA.

1472285_3

**ANSWER:** Defendants admit the allegations in paragraph 1 for jurisdictional purposes only; otherwise the allegations are denied.

2. Plaintiff seeks a declaration that his rights were violated, an award of unpaid wages, compensatory damages, exemplary damages, punitive damages and an award of attorney's fees and costs to make him whole for the damages suffered.

**ANSWER:** Defendants admit the allegations in paragraph 2 for jurisdictional purposes only; otherwise the allegations are denied.

## JURISDICTION & VENUE

3. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

**ANSWER:** Defendants admit the allegations in paragraph 3 for jurisdictional purposes only; otherwise the allegations are denied.

4. Defendants' employees engage in interstate commerce; therefore, they are covered by the FLSA on an individual basis.

**ANSWER:** Defendants admit the allegations in paragraph 4 for jurisdictional purposes only; otherwise the allegations are denied.

5. At all material times, Defendants have been an enterprise in commerce or is in the production of goods for commerce within the meaning of section 203(s)(l) of the FLSA because Defendants have had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(l).

**ANSWER:** Defendants admit the allegations in paragraph 5 for jurisdictional purposes only; otherwise the allegations are denied.

6. Defendants are an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA.

**ANSWER:** **Defendants admit the allegations in paragraph 6 for jurisdictional purposes only; otherwise the allegations are denied.**

7. Defendant corporation is and was at all times relevant incorporated in the State of Michigan and has its principal place of business located in Grand Rapids, Michigan, within the United States Judicial District of the Western District Michigan.

**ANSWER:** **The allegations in paragraph 7 are admitted.**

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claims pied in this complaint occurred in this District.

**ANSWER:** **Defendants admit the allegations in paragraph 8 for jurisdictional purposes only; otherwise the allegations are denied.**

## PARTIES

9. Plaintiff Emilio Torres is a resident of the County of Kent, state of Michigan, and whose consent to sue is attached as Exhibit A.

**ANSWER:** **The allegations in paragraph 9 are admitted upon information and belief.**

10. Defendant Vitale's Italian Restaurant, Inc., (hereinafter referred to as "Vitale's") is a Michigan Corporation whose principal place of business is located at 834 Leonard N.E. Grand Rapids, Michigan 49503. Exhibit B.

**ANSWER:** **The allegations in paragraph 10 are admitted.**

11. Defendant Salvatore Vitale owns and operates Defendant Vitale's since at least 1987.

**ANSWER:    Defendants admit the allegations in paragraph 11 for jurisdictional purposes only; otherwise the allegations are denied. The Vitale's restaurant is independently owned by Salvatore Vitale and has been operated continuously since 1966.**

12. Defendant Vitale's Italian Restaurant, Inc. is an Italian restaurant serving pizza, pasta, and other such Italian cuisine and is a "place for dinner, viewing sports, or your favorite takeout!" See http://www.theoriginalvitales.com/ last visited September 17, 2018.

**ANSWER:    Defendants admit the allegations in paragraph 12 for jurisdictional purposes only; otherwise the allegations are denied.**

13. Defendant Salvatore Vitale is the owner of Defendant Vitale's Italian Restaurant, Inc and is responsible for the day to day operations of Defendant Vitale's.

**ANSWER:    The allegations contained in paragraph 13 are admitted in part. Mr. Vitale is the sole owner of the restaurant, and he maintains ultimate authority and control. But, at age 76 (and at times in poor health), Mr. Vitale delegated substantial day-to-day activities to his team of seven to eight managers: two "back house" managers (who oversaw the kitchen areas, including Torres), two Take-out Managers, two "front-house" Managers (who oversaw the bar and wait-staff), and two Restaurant Managers (a separate location across the parking lot). The individual managers were responsible for most hiring and firing decisions for their direct reports, as well as almost all scheduling and day-to-day responsibilities at the restaurant.**

<u>**GENERAL ALLEGATIONS**</u>

14. Plaintiff worked at Defendant Vitale's Italian Restaurant, Inc. and worked for Defendant Salvatore Vitale from March 2017 to May 7, 2018.

**ANSWER:** **The allegations in paragraph 14 are generally denied.**

15. Plaintiff was hired to work for the Defendants in the kitchen.

**ANSWER:** **The allegations contained in paragraph 15 are generally admitted; Defendants hired Mr. Torres to work as the evening back house / Kitchen Manager, and he had other responsibilities, including supervisory duties as described above. Mr. Torres gradually switched his own schedule to the day shift within a few months of hire.**

16. Plaintiff would prepare food, plate food, run the dishwasher, prep cook, janitorial work, cleaned floors and walls, and performed maintenance of kitchen equipment among other duties.

**ANSWER:** **The allegations contained in paragraph 16 are generally denied.**

17. Plaintiff was employed to perform general labor in the restaurants for the Defendants.

**ANSWER:** **The allegations contained in paragraph 17 are generally denied.**

18. Plaintiff would work first shift and second shift from 8:00 AM to 9:00 PM or 10:00 PM.

**ANSWER:** **Defendants admit that Mr. Torres was the daytime (first shift) Kitchen Manager, which would typically run from 8:00 AM to 6:00 PM. The remaining allegations in paragraph 18 are denied as untrue; Mr. Torres had a variable work schedule that was typically 9-10 hours per day (54-60 hours per week) and rarely exceeded 12 hours per day.**

19. Plaintiff would sometimes arrive at 7:30 AM due to heavy workload.

**ANSWER:** **The allegations contained in paragraph 19 are denied. Mr. Torres was expected to unlock the building and supervise cleaning crews from 8-11 AM before the**

sports bar opened. Defendants repeatedly instructed Mr. Torres not to come in to work before 8:00 AM, however, as the sports bar does not open until 11:00 AM daily and the restaurant (a separate building across the parking lot) did not open until 4:00 PM daily.

20. Defendants were fully aware that Plaintiff arrived prior to the start of his shift.

**ANSWER:** The allegations contained in paragraph 20 are denied. Defendants instructed Mr. Torres not to come in early and took disciplinary action against Mr. Torres numerous times for doing so. Mr. Torres was also disciplined for drinking at the bar following his shifts, failing to clock out, and failing to go home after his shifts.

21. Plaintiff would work Monday through Saturday and would work around 75 hours per week.

**ANSWER:** The allegations contained in paragraph 21 are admitted in part; Mr. Torres was typically scheduled to work five to six days a week, but denied as untrue that he worked around 75 hours per week.

22. Plaintiff would be compensated to the amount of $15 per hour, straight time via check for all hours worked under forty (40).

**ANSWER:** Defendants admit that Mr. Torres's normal pay rate was $15.00 per hour; otherwise the allegations in paragraph 22 are denied. Mr. Torres was paid an overtime rate of $22.50 at all times relevant. And, with the corrected final paycheck and wage statement that was issued in good faith before this suit was served, Mr. Torres had been paid an overtime rate of $22.50 for all overtime hours allegedly worked.

23. Plaintiff would be paid straight time for hours worked over forty (40) hours straight time via cash.

**ANSWER:**   **The allegations contained in paragraph 23 are denied.**

24.    Plaintiff had two different time cards he was required to use to track his hours worked. Plaintiff was required to punch 40 hours on one time card and any hours worked in excess of those forty (40) hours over forty on the other time card.

**ANSWER:**   **The allegations contained in paragraph 24 are admitted to the extent that Mr. Torres used two time cards (one for each shift or department), but the remaining allegations are denied.**

25.    Defendant Salvatore Vitale was responsible for the day to day operation of the Vitale's Italian Restaurant, Inc., was directly involved in the decisions regarding the work, scheduling and compensation of Plaintiff.

**ANSWER:**   **The allegations contained in paragraph 25 are generally admitted that Mr. Vitale had ultimate authority as owner and maintained an "open door" policy to handle problems that inevitably arose. Compensation was set by Mr. Vitale in consultation with the individual managers, including Mr. Torres, who was a Kitchen Manager.**

26.    Defendant Salvatore hired and fired the Plaintiff as well as was responsible for the hiring, disciplining and termination of all other employees.

**ANSWER:**   **Defendants generally admit that Mr. Vitale exercises authority to hire and fire restaurant employees, and that Mr. Vitale hired the Plaintiff.  It is denied that the Plaintiff was fired; the Plaintiff quit of his own volition to avoid being demoted.**

27.    Defendant Salvatore set the wage rates for the Plaintiff.

**ANSWER:**   **The allegations in paragraph 27 are admitted.**

28.    Defendant Salvatore made decisions regarding how and when Plaintiff was

-7-

compensated including whether or not to pay the required overtime premium for all hours worked over 40 hours per week.

**ANSWER:    The allegations contained in paragraph 28 are denied.**

29. Defendant Salvatore supervised Plaintiff.

**ANSWER:    Defendants admit the allegations in paragraph 29 for jurisdictional purposes only; otherwise the allegations are denied.**

30. Defendant Salvatore gave instructions and direction to the Plaintiff.

**ANSWER:    Defendants admit the allegations in paragraph 30 for jurisdictional purposes only; otherwise the allegations are denied.**

31. Defendant Salvatore was fully aware of the hours worked by Plaintiff.

**ANSWER:    Defendants admit that Mr. Vitale had a general working knowledge of the hours worked by the restaurant managers. In further response, Defendants incorporate their responses to paragraphs 18 through 24.**

32. On March 28, 2018, a customer at the restaurant had a heated discussion with Defendant Salvatore which resulted in the customer making a threat to report Defendant Salvatore to the IRS for his failure to pay overtime and for payment of wages in cash.

**ANSWER:    The allegations in paragraph 32 are denied.**

33. Defendant Salvatore and Manager Belinda Pierson made immediate changes to their implementation of the two timecard system as a result of the customer's threat.

**ANSWER:    The allegations in paragraph 33 are denied.**

34. Defendant Salvatore and Manager Pierson instructed Plaintiff and the other employees to take their second timecards home with them and to not leave those second time

cards at the restaurant because of the customer's threats.

**ANSWER:     The allegations in paragraph 34 are denied.**

35.     Defendants Salvatore and Manager Pierson further instructed Plaintiff and other employees to turn their timecards to Manager Pierson at her home on Sundays so she could calculate the wages due from home.

**ANSWER:     The allegations in paragraph 35 are denied.**

36.     Defendant Salvatore specifically told Plaintiff that these changes were due to the customer's threats of reporting the Defendants to the IRS.

**ANSWER:     The allegations in paragraph 36 are denied.**

37.     As a result of this incident, Plaintiff began to question the use of the two timecard system as well as the policy of non-payment of overtime and cash payments.

**ANSWER:     Defendants lack knowledge as to the Plaintiff's thoughts or state of mind. Any remaining allegations in paragraph 37 are denied.**

38.     Plaintiff asked Defendant Salvatore why they could not just use one timecard to track all hours worked in a week.

**ANSWER:     The allegations in paragraph 38 are denied.**

39.     Defendant Salvatore told him not to worry about it.

**ANSWER:     The allegations in paragraph 39 are denied.**

40.     From the customer's threats up until his termination, Plaintiff would frequently question Defendant Salvatore about the two-timecard system and the fact that he was not paid an overtime rate.

**ANSWER:     The allegations in paragraph 40 are denied.**

41. Plaintiff would question Defendant Salvatore about once a week regarding the same issue.

**ANSWER:** **The allegations in paragraph 41 are denied.**

42. Plaintiff would also question the practice of the manager Pierson collecting tips on a daily basis and holding them for six months and not distributing the proper amounts as agreed.

**ANSWER:** **The allegations in paragraph 42 are denied.**

43. Defendant Salvatore would often ignore Plaintiff s questioning.

**ANSWER:** **The allegations in paragraph 43 are denied.**

44. On May 4, 2018, Plaintiff once more questioned Defendant Salvatore regarding the same matters.

**ANSWER:** **The allegations in paragraph 44 are denied.**

45. Plaintiff asked Defendant why the employees could not just track all hours worked on one timecard and have Defendants pay overtime for hours worked in excess of forty (40) in a work week.

**ANSWER:** **The allegations in paragraph 45 are denied.**

46. Plaintiff also complained about not getting paid the proper amounts from the tip pool by Manager Pierson.

**ANSWER:** **The allegations in paragraph 46 are denied. As one of the mangers, Plaintiff helped set the amounts he and his subordinates received. Neither Ms. Pierson, nor the Defendants received moneys from the tip pool.**

47. Defendant Salvatore told him he would not change the two time card system and that he was not going to pay overtime.

**ANSWER:** **The allegations in paragraph 47 are denied.**

48. Defendant Salvatore once again failed to address the issues with the tip pool distribution.

**ANSWER:** **The allegations in paragraph 48 are denied.**

49. Once Plaintiff returned to work on May 7, 2018, he was immediately fired.

**ANSWER:** **The allegations in paragraph 49 are denied. The Plaintiff voluntarily quit to avoid additional discipline after a series of "no call/no shows" where Plaintiff failed to report to scheduled work or call in that he would be absent.**

50. Angelo Pichoni, a takeout supervisor, per Defendant Salvatore's instruction, told Plaintiff to hand over the keys and that he no longer had a job.

**ANSWER:** **The allegations in paragraph 50 are denied. The Plaintiff voluntarily quit.**

## WILLFUL VIOLATION OF FLSA

51. Termination of Plaintiff's employment was an attempt by Defendants to subvert its obligations under state and federal wage law as well as to punish him for questioning their lack of paying overtime premiums.

**ANSWER:** **The allegations in paragraph 51 are denied.**

52. Defendants willfully terminated Plaintiff m retaliation of Plaintiff complaining to Defendant Salvatore about his right to receive an overtime premium for all hours worked in excess of forty hours in a work week.

**ANSWER:** **The allegations in paragraph 52 are denied.**

53. Defendants knew or should have known that terminating Plaintiff in retaliation was a violation of the FLSA. 29 U.S.C.A. § 215(a)(3).

**ANSWER:    The allegations in paragraph 53 are denied.**

54. The FLSA, 29 U.S.C. § 216(a), provides that as a remedy for a violation of the retaliation provision of the FLSA, such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, punitive, and any emotional pain and suffering endured by the Plaintiff due to the retaliatory termination.

**ANSWER:    The allegations in paragraph 54 are purely legal conclusions, contain no factual allegations, and require no response. To the extent a response is required, the allegations are denied as untrue.**

## DEFENDANTS' RETALIATION

55. Defendants terminated Plaintiff s employment in direct retaliation of Plaintiff inquiring and complaining about Defendants' pay practices.

**ANSWER:    The allegations in paragraph 55 are denied as untrue.**

56. Plaintiff s work habits had not changed; there were no occurrences that would give Defendants cause to fire Plaintiff.

**ANSWER:    The allegations in paragraph 56 are denied as untrue, as the Plaintiff quit working at the restaurant of his own volition.**

57. Plaintiff was not given a reason for his termination.

**ANSWER:    The allegations in paragraph 57 are denied as untrue, as the Plaintiff quit working at the restaurant of his own volition.**

58. Plaintiff was fired for the sole reason of inquiring about Defendants' pay practices.

**ANSWER: The allegations in paragraph 58 are denied as untrue, as the Plaintiff quit working at the restaurant of his own volition.**

59. Plaintiff suffered adverse employment action in the form of termination by Defendants.

**ANSWER: The allegations in paragraph 59 are denied as untrue, as Plaintiff quit working at the restaurant of his own volition. Plaintiff would have been demoted from his position as manager had he stayed for failure to report to work and a series of flagrant "no call/ no shows" but Plaintiff quit before the discipline could be meted out.**

60. After the termination, Plaintiff applied for unemployment benefits and was surprised to find out that the Defendants had challenged his receipt of benefits.

**ANSWER: Defendants lack knowledge as to the Plaintiff's thoughts or state of mind, but admit that Defendants challenged Plaintiff's receipt of unemployment benefits because the Plaintiff was not fired; he voluntarily quit working at the restaurant.**

61. Defendants claimed in their response to his request for unemployment benefits that he had voluntarily quit his employment.

**ANSWER: The allegations in paragraph 61 are admitted.**

62. The Michigan Unemployment Insurance Agency determined that Plaintiff had in fact been terminated and awarded him benefits.

**ANSWER: The allegations in paragraph 62 are purely legal conclusions, contain no factual allegations, and require no response. To the extent a response is required, the**

**allegations are denied as untrue; the State did not conduct an evidentiary hearing or make factual rulings of any kind.**

63. Defendants' false statements to the Michigan Unemployment Insurance Agency were further acts of retaliation against Plaintiff.

**ANSWER: Defendants deny making any false statements to the Michigan Unemployment Insurance Agency and further deny any acts of so-called retaliation against Plaintiff.**

## COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §215(a)(3) DEFENDANTS' UNLAWFUL RETALIATION

64. Plaintiff realleges and incorporates all previous paragraphs.

**ANSWER: Defendants incorporate their responses to the preceding paragraphs as if fully restated herein.**

65. Defendant Salvatore, an agent acting on his own behalf and on behalf of the Defendant Vitale's, terminated Plaintiff's employment and has taken action in retaliation of Plaintiff complaining about Defendants' pay practice of not paying an overtime premium.

**ANSWER: The allegations in paragraph 65 are denied.**

66. Defendant Salvatore ordered the termination of Plaintiff s employment was due to his complaining about his right to receive an overtime premium.

**ANSWER: The allegations in paragraph 66 are denied.**

67. Defendant Salvatore's termination of employment constitutes unlawful retaliation under the FLSA, 29 U.S.C. §215(a)(3).

**ANSWER:** **The allegations in paragraph 67 are denied.**

68. Defendants knowingly, willfully, maliciously, intentionally and without justification acted to deprive Plaintiff of his rights.

**ANSWER:** **The allegations in paragraph 68 are denied.**

## GENERAL DENIAL

The Defendants deny all factual allegations in the Complaint not specifically admitted in this Answer above.

## RELIEF REQUESTED

WHEREFORE, the Defendants request that the Plaintiff's Complaint be dismissed and that they be awarded costs, interest, and their attorney's fees, and any other relief that this Court deems fair and just.

## AFFIRMATIVE DEFENSES

Defendants, through their undersigned counsel, hereby advise Plaintiff that they reserve the right to rely upon one or more of the following affirmative defenses:

1. Mr. Torres has unclean hands.

2. Mr. Torres's claims are barred in whole or part because such claims are a direct result of Plaintiff's own actions, including quitting to avoid discipline for a series of "no calls / no shows."

3. Each count of Mr. Torres's claims may have failed to state a claim upon which relief may be granted.

4. Mr. Torres failed to mitigate his damages, if any.

5. Mr. Torres has been unjustly enriched by demanding and accepting cash payments from Vitale's for the overtime he worked.

6. Mr. Torres has intentionally overstated his hours worked.

7. Some or all of Mr. Torres's claims may be barred by the applicable statute of limitations.

8. The alleged statutory violations, if any, were not intentional and Vitale's Restaurant acted at all times in good faith as evidenced by the immediate issue of a corrected wage statement upon learning of the error (upon demand).

9. When Mr. Vitale paid portions of Mr. Torres's bonus and overtime in cash, Vitale's Restaurant mistakenly collected less than the correct amount of FICA and other withholdings tax from Mr. Torres's total compensation, and therefore, Vitale's Restaurant is entitled to collect the amount of the under collection from Mr. Torres as permitted under 26 C.F.R. § 31.6205.

10. Mr. Torres committed embezzlement and civil theft when he retained (1) copies of Salvatore Vitale's secret recipes; (2) the Vitale's Restaurant's Gordon Food charge card; (3) and other Vitale's Restaurant property including weekly schedules, notes, order guides, and PAR guides following his resignation on or about May 7, 2018.

11. Mr. Torres has accepted one or more payments, which are subject to accord, satisfaction, or offset against any purported claims herein.

12. To the extent that Plaintiff's alleged underpayments were corrected in good faith before this lawsuit was properly served, this Court lacks jurisdiction over the claims.

13. Plaintiff was not terminated from his employment at the Vitale's restaurant by the Defendants, and any representations to the contrary made by the Plaintiff to any third parties, including to the Michigan Unemployment Insurance Agency, are false.

14. Defendants reserve the right to amend their affirmative defenses including each and every affirmative defense that may become known throughout this proceeding.

-17-

## **RESERVATION OF DEFENSES**

Defendants reserve the right to amend or add additional affirmative defenses as discovery progresses.

Dated:  October 29, 2018					RHOADES McKEE PC
							Attorneys for Defendants


							By: /s/ Ian A. Northon
							     Ian A. Northon  (P65082)
							     Patrick E. Sweeney  (P79822)
							Business Address:
							     55 Campau Avenue, N.W., Suite 300
							     Grand Rapids, MI 49503
							     Telephone:  (616) 235-3500